ANNIE I. FAUST v. T. S. MURPHY ET AL.

1. GUARDIAN. *Chancery clerk. Bond. Code* 1880, § 2117. *Laws* 1882, p. 114.

Section 2 of the act of March 9, 1882 (Laws, p. 114), which provides that the chancery clerk, when appointed guardian of a minor whose estate is less than one thousand dollars, may be required to give a bond as such, is not in conflict with § 2117, code 1880, which requires the chancery court to appoint the chancery clerk guardian without bond, other than his official bond, of a minor for whom no guardian has been appointed. If no specific bond be required of the clerk so appointed, the code provision controls, and his official bond will stand as security for the ward.

2. OFFICIAL BOND. *Insufficiency. New sureties, when required. Death of surety. Code* 1880, § 413.

Under § 413, code 1880, providing that where insufficiency of an official bond arises from the fact that some of the sureties have *removed* or become insolvent, or where some of the sureties petition for relief, the place of such insufficient or such released sureties on the bond may be supplied by new and approved sureties, the mere fact that one of the sureties has *died* does not affect the bond or authorize the taking of new sureties in lieu of such deceased surety; and if the board of supervisors, on petition of a chancery clerk, require new sureties on his official bond merely because one has died, its act will be void, and the new sureties will not be bound.

3. SAME. *Unauthorized substitution of sureties. Code* 1880, §§ 403, 411.

Such unauthorized substitution of sureties is not validated, nor are the new sureties made liable, by § 403, code 1880, which merely cures irregularities in bonds which, by law, must or may be taken; nor by § 411, code 1880, which deals with new bonds which are required to be given by public officers in certain designated contingencies.

FROM the circuit court of Noxubee county.
HON. S. H. TERRAL, Judge.
The case is sufficiently stated in the opinion.

*O'Neill & Williams*, for appellant.

In accepting new sureties in lieu of Ames, who had died, the board of supervisors obviously acted under § 413, code

of 1880. The board was authorized to proceed under this section and substitute sureties instead of requiring a new bond. Removal of some of the sureties is made a cause for substitution. *A fortiori* would death, a removal from time to eternity, without possibility of return, authorize what was done. Ames' death did not relieve his estate as to breaches which had already occurred. The weight of authority is that his estate is not liable for breaches which occurred after his death. It follows that his death released his estate from his obligation on the bond just as if he had removed or had petitioned for relief. DeGolyar on Guaranty and Sureties, 422; 79 N. Y., 383; 15 Wall., 141. The breach in this case did not occur until after Ames' death. Accordingly, this being tantamount to removal, the cause existed either for making a new bond or supplying new sureties.

Under § 411, code 1880, the board of supervisors had the right to require a new bond, but chose to act under § 413, and merely require new sureties. We submit there was an exact compliance with the statute. The code of 1871 contained no provision for supplying new sureties. Hence, *State* v. *Mathews,* 57 Miss., 1, and *Matthews* v. *Millsaps,* 58 *Ib.,* 564, have no application. In support of the action of the board of supervisors, it must be presumed that the new bond was adjudged insufficient.

No objection can be made to the irregularity of the bond, since § 403, code of 1880, cures all defects of form.

*Mayes & Harris,* for parties indirectly in interest, on the same side.

1. Under act of 1882 (Laws, p. 114) the official bond of the chancery clerk is not a security for moneys received by him as guardian by appointment of the court. This act repealed § 2117, code 1880, so far as it provided that a chancery clerk, appointed to be guardian of a minor, "shall not be required to give bond as guardian in such case, and his

official bond shall cover his liability as such guardian," etc. This act revised and dealt with the whole subject, so that, from the time of its approval, no official bond of a chancery clerk was liable for his dealings as guardian under appointment of the court. Where two statutes relate to the same subject-matter, though not in terms repugnant or inconsistent, if the latter one is plainly intended to prescribe the only rule that shall govern, it will repeal the earlier. *Sacramento* v. *Bird*, 15 Cal., 294; *Swann* v. *Buck*, 40 Miss., 268; 15 Gray, 54; Sedgwick on Stat. and Const. Law, 100, n.

The intent to repeal, as in other instances, must be gathered from a consideration of the whole scope of the old and new law. We submit that the intention in this case was to relieve the general bond of the burden of the clerk's responsibility in guardianship matters. For examples, see *Parry* v. *Croydon*, 11 C. B. (N. S.), 579; 55 Pa. St., 126.

As to estates over ten thousand dollars, the latter statute is imperative that a new bond shall be required. As to other estates, the court may require it, and, if the court fail to do so, any relative may petition therefor. Manifestly, the court must require it if such petition is presented. There is irreconcilable contradiction in the two statutes, since the former says the clerk shall not be required, and the latter says he may be required, to give a guardian's bond.

The liability of sureties is *strictissimi juris*. The chancery clerk, acting as guardian, acts not by virtue of his election and commission, but by virtue of his appointment. Where, as here, a statute requires the clerk to give a special bond, the case is within the rule of *State* v. *Felton*, 59 Miss., 402. If, under the act of 1882, the chancery court appoints the clerk guardian without requiring a bond, there is no security for his fidelity, beyond his personal responsibility.

2. If the general bond continued liable, that is, if Ames' estate was not legally released, the appellees who signed after the death of Ames, in his room and stead, are liable as sureties thereon. Section 411, code 1880, authorizes boards of

supervisors to require a new bond, if from any cause an official bond shall be found insufficient. It must be assumed that the board of supervisors, in acting, has determined that the death of the surety in this case was a sufficient cause, and this is final. Surely death was a cause much greater in degree than the mere removal of residence. The word "insufficient" is a comprehensive term, embracing every cause or ground the court may regard as amounting to that. *State* v. *Hull*, 53 Miss., 626.

3. The taking of new sureties "in the room and stead" of Ames does not necessarily mean that the intent of the order was that Ames' estate was to be released. The board may have considered the death of one of the sureties deprived the county of the valuable service of the surety in watching the clerk and the performance of his duties, or it may have considered the mere personal relation of the surety to the bond.

4. Whatever defects there were in the bond were cured by § 403, code 1880. The curative effect of that statute applies where a bond is irregular in any respect, if it was delivered as the official bond of the officer, and served as such.

Argued orally by *Edward Mayes*, for appellant.

*Rives, Rives & Stokes*, for appellees.

The board of supervisors, in accepting new sureties on the bond, was unauthorized. It was a nullity, and neither released the estate of Ames nor bound new sureties. Section 411, code 1880, relates only to the execution of new official bonds. Sections 411 and 412 were in force when appellees signed the bond in question. They are identical with §§ 315 and 316, code of 1871, which were construed in *State* v. *Mathews*, 57 Miss., 1, where this court held that sureties are not released, nor are additional sureties bound, by substituting the latter for the former by direction of the board of supervisors.

Certain curative statutes as to the force and effect of bonds are invoked by appellants, but these were in effect when the above-cited case was decided. Moreover, they apply only to bonds required to be given at the time the officer enters upon his duties. See code 1880, § 403.

· The board of supervisors proceeded under § 413, code 1880, but that does not apply here. The causes authorizing the substitution of sureties are numerous. The death of a surety is not one of them. The death of Ames could not be regarded as a removal within the meaning of the statute. His estate remained liable, and the bond was not affected by his death. Brandt on Suretyship, § 133; *Bank* v. *Yard,* 30 Am. St. Rep., 810; *Chamberlain* v. *Dunlap,* 22 *Ib.,* 814.

*A. C. Bogle* and *J. W. Drake,* on the same side.

Unless the taking of new sureties and the release of those already on the bond was authorized, the signing of the bond after its approval was without consideration, and the signers would be mere volunteers. *State* v. *Bartlett,* 30 Miss., 624; Murfree on Off. Bonds, § 67. This is the law, and the intent of the parties in signing the new bond is immaterial. The only fact relied on as authorizing this proceeding was that one of the sureties had died. This was not sufficient. The old sureties were not released, and the board of supervisors acted without legal sanction, and its action was nugatory. *State* v. *Mathews,* 57 Miss., 1; *Matthews* v. *Millsaps,* 58 Miss., 564. It is not alleged or contended that the bond became insufficient from any cause whatever; nor is it alleged that any of the sureties had removed or become insolvent, or that any of the sureties had petitioned to be removed from the bond. Section 413, code 1880, therefore, does not apply. The evil contemplated by the statute is that of the insufficiency of official bonds. For aught that appears in the declaration, the bond was sufficient without Ames. Whether sufficient or not, his death did not operate to release his estate, and therefore could not affect the sufficiency of

the bond. *Hecht* v. *Skaggs*, 53 Ark., 291; *Bank* v. *Yard*, 24 Atl. Rep., 635.

Argued orally by *A. C. Bogle* and *J. E. Rives*, for appellees.

COOPER, J., delivered the opinion of the court.

The declaration in this cause is vague, uncertain and defective. If any official liability of R. C. Patty, the late chancery clerk of Noxubee county, is stated at all, it is only by inference, suggestion and argument that it is to be discovered. We say this much to exclude the conclusion that the judgment of the court below would have been reversed by us but for the other grounds on which it is supported, and which we consider and decide at the earnest request of counsel, without regarding the defects of the declaration.

Stating the case as we suppose it was intended to be set forth, the facts are as follows: Robert C. Patty was elected to the office of clerk of the chancery court of Noxubee county for the term beginning on the first Monday of January, A.D. 1888. He gave an official bond as prescribed by law, with J. W. Patty, Charles B. Ames and Jacob Holberg as sureties thereon, by the terms of which the obligors bound themselves, "their heirs, administrators and executors," conditioned that the said Robert C. Patty should "faithfully perform and discharge all the duties of said office of clerk of the chancery court, and all acts and things required by law or incident to the said office during his continuance therein."

During his said term of office he was, as such officer, appointed guardian of the estate of Annie I. Faust, a minor. The said Patty died in December, A.D. 1890, and, upon settlement of his account as such guardian, made by his administratrix, a balance was found due to his ward, for which a decree was made by the court having jurisdiction of such guardianship, on which execution has been properly issued and returned *nulla bona*.

In August, 1888, C. B. Ames, one of the sureties upon Patty's official bond, died, which fact Patty communicated to the board of supervisors of Noxubee county, and, he consenting thereto, and waiving the notice provided by statute, the said board ordered that new sureties be supplied in the room and stead of C. B. Ames, deceased, within thirty days from the date of said order; and within that time T. S. Murphy, J. L. Griggs and B. J. Allen subscribed said official bond in the room and stead of C. B. Ames, deceased. The breach of the bond assigned is, that neither the said Robert C. Patty during his life, nor his administratrix since his death, have accounted with and paid over to the said minor, Annie I. Faust, or to her guardian, Walter Price, duly appointed to such guardianship since the death of said Patty, the estate and moneys of the said minor in his hands as such guardian.

This action is against T. S. Murphy, J. L. Griggs and B. J. Allen only, neither J. W. Patty nor Jacob Holberg nor the representative of C. B. Ames, deceased, being sued. The defendants demurred to the declaration as presenting no cause of action against them, and their demurrer was sustained, from which judgment the plaintiff appeals.

It is argued for the appellees: (1) That the sureties upon the official bond of the chancery clerk are not liable for his default as guardian touching the estates of minors committed to him as such clerk; (2) that if such sureties are so liable, yet they, the appellees, never became bound as such sureties upon such bond, because there was no authority in law for the board of supervisors of Noxubee county to require sureties to be supplied on the official bond of said clerk in the place of C. B. Ames, deceased, and no authority in law for them to accept additional or substituted sureties thereon.

Section 2117 of the code of 1880 provided that "if no one will qualify as guardian of a minor who has property, and is in need of a guardian, it shall be the duty of the chancery court of the county in which such minor resides to appoint ·

the clerk of such court to be the guardian of such minor, who shall discharge the duties of guardian of such minor according to law, and under the orders and direction of the chancery court, and subject to be dealt with as for a contempt for any failure so to do; but he shall not be required to give bond as guardian in such case, and his official bond shall cover his liability as such guardian, and he shall be bound and liable in all respects as any other guardian."

It is conceded by counsel that under this law the sureties of the clerk would be liable for his acts as guardian, but they contend that this section of the code, in so far as it provided for such liability, was repealed by the provisions of an act approved March 9, 1882 (Laws, p. 114), which provided:

"That in all cases arising under § 2117 of the code of 1880, and where the estate of the minor exceeds the sum of ten thousand dollars, and the clerk of the chancery court is appointed to discharge the duties of guardian of such minor under the provisions of said § 2117, the chancery court shall require of such chancery clerk a bond, with good and approved security, in the amount required for guardians' bonds, and conditioned and payable as such bonds are now required by law.

"SEC. 2. That in all cases wherein the chancery clerk is appointed to discharge the duties of guardian of a minor under § 2117 of the code of 1880, and whose estate is less than ten thousand dollars, the chancery court may require of such chancery clerk a bond, with sufficient sureties, payable and conditioned as required by law for guardian's bond, and in such penalty as may be deemed sufficient by the court; and if the chancery court fails to require such bond, any relative of the minor may petition the court to require such bond to be given; or, if one has been given, may petition the chancery court for a bond in a larger penalty or with better security, and the chancery court shall decree thereon according to right and justice and the protection of the estate of the minor."

The argument of counsel is that under the code the lia-
bility of the official bond is declared, coupled with the pro-
vision that no bond as guardian shall be required; that the
act of 1882 provides that, where the estate of the minor ex-
ceeds in value ten thousand dollars, a bond as guardian shall
be required, and, where the estate is of less value, such bond
may be required by the court; and if it is not, that any rel-
ative of the minor may, by petition, secure its execution;
that the provisions of this act are directly in conflict with
that of the code declaring that no bond shall be required,
and therefore both cannot co-exist; that in this conflict the
last expression of legislative will must prevail, and that if
this code provision falls, so must that connected with and
dependent on it, which declares liability on the official bond
for the acts of the clerk as guardian.

There is no suggestion in the pleadings here that the estate
of Annie I. Faust exceeded in value the sum of ten thousand
dollars; and since no bond as guardian seems to have been
required by the court, as it would have been the duty of the
court to have required if the estate had been of that value,
we must, upon the presumption of due performance of offi-
cial duty, assume that the estate was not of that value. We
will leave the question of the effect of a failure to require
bonds in that class of estates open for determination when
it arises.

We fail to perceive any conflict between the second section
of the act of 1882, having reference to estates of less value
than ten thousand dollars, and § 2117 code 1880. By the
code, liability on the official bond of the clerk is declared,
but by the act of 1882 it is further provided that a specific
bond may be required. When this is not done, the code
provision controls.

But the appellees were never, in law, the sureties on the
official bond of Patty, the chancery clerk. We are unable
to distinguish this case from that of *Mathews* v. *The State*,
57 Miss., 1.

The death of Ames, one of the sureties, did not in any degree affect the bond of the officer. The surety had bound himself, his heirs, executors and administrators that Patty, the clerk, should faithfully discharge his duties as such officer " during his continuance in said office." His death did not release his estate from liability for future defaults by the officer. *Hightower* v. *Moore,* 46 Ala., 387; *Green* v. *Young,* 8 Greenleaf, 14 (22 Am. Dec., 218); *Royal Ins. Co.* v. *Davies,* 40 Iowa, 469; *Chamberlain* v. *Dunlap,* and note thereto, 22 Am. St. Rep., 807; *Bank* v. *Yard,* 150 Penn. St., 351.

Section 403 of the code of 1880 has effect only to cure irregularities in bonds which by law are required or may be given.

Section 411 of said code has no relation to the point involved in this case. It relates to the subject of new bonds to be given by public officers under the states of case therein provided for. But a new bond was not required in this case, and hence this section has no relevancy to the question involved.

The board of supervisors and the officer manifestly proceeded under § 413 of the code, which declares that " when the insufficiency of an official bond arises from the fact that some of the sureties have removed or become insolvent, or when some of the sureties petition for relief and others do not, the place of such insufficient or such relieved sureties on the bond may be supplied by new and approved sureties executing the original bond, subscribing it with an explanation of the purpose for which they subscribe it; and this shall not in any manner vary the liability of the former sureties on the bond, except as released, as aforesaid, on their petition for that purpose, but such bond shall bind all its subscribers, and the change thus made shall be noted on the record of the bond."

It is not pretended that any of the sureties on the bond had removed or become insolvent, nor had any one of them petitioned for relief from the bond, and it is only under such

circumstances that authority exists for the board to require or receive substituted sureties.

.*The judgment is affirmed.*