UNITED STATES FIDELITY & GUARANTY CO. *v.* A. D. FELDER.

[62 South. 236.]

1. INSURANCE. *Surety companies. Right to recover premiums. Discharge of sureties. Code* 1906, *sections* 121-634. *Receivers. Bonds.*

Where a surety company as provided under Code 1906, section 121 made bond for the assignee receiver of a bank, in consideration of the payment by such receiver of an annual premium and the first premium was paid, but before the second premium became due, the chancery court in which the matter was pending on the *ex parte* petition of the receiver entered an order authorizing the substitution of a second bond for the first, and discharging the surety company from future liability on the first bond, this did not relieve the receiver from the payment of the second premium since the court had no power to enter such order.

2. SAME.

The power to release sureties is purely statutory, and the reasons for such discharge prescribed by the statute must be shown to have existed when the power is exercised.

3. SAME.

The only provision of law empowering the chancery court to require its receivers to give a new bond, being section 634, Code 1906, in the cases where it is alleged that the security on a receiver's bond "is insufficient," the court cannot, during a receivership, although the receiver has partly administered and distributed the assets, order a smaller bond to be taken, and discharge the sureties on the original bond.

APPEAL from the circuit court of Pike county.
HON. D. M. MILLER, Judge.

Suit by the United States Fidelity and Surety Company against A. D. Felder. From a judgment for defendant, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*Wm. M. Hall,* for appellant.

The sole question in the case is, whether the ex parte order of the chancery court, certified copy of which is exhibited with the declaration, discharged the surety company from Felder's bond. If it did, the surety company is not, of course, entitled to the premium, and the demurrer was properly sustained; otherwise, appellant is entitled to the premium, and the demurrer should have been overruled.

Now, it is quite certain, as the appellant has learned from experience, that had a default occurred and the surety on the second bond been insolvent, the court would have held that the order of the chancery court was invalid and that appellant's bond continued in force and it was liable for the default. If this contingency should occur in this case or a similar case, the effect would be that appellant would be carrying the risk without getting the stipulated compensation therefor, and that would be manifestly unfair. We have the converse of the above proposition, and ask the court's decision thereon.

Appellant's contention is that the chancery court was and is without power to discharge the bond, except under statutory authority, and then only when that authority is strictly pursued. There is no such authority to be found in the statutes, and the order was void and ineffective and appellant was not discharged from the bond, and is, therefore, entitled to the stipulated premium.

The provision for the bond given by an assignee upon becoming receiver is found in Code, section 121: "The assignee or trustee must file a bond with his petition to be approved by the clerk, in penalty equal to the value of all the property assigned, and two hundred dollars additional, payable to the state, with at least two sufficient sureties, conditioned for the faithful administration of his trust. Any judgment or decree that may be rendered in said cause or proceeding against the principal in the bond may be rendered against the sureties

therein.'' (The requirement of this section for two sur-
eties, is amended by section 2669 so that one surety com-
pany may be accepted as sole surety on such a bond.)

There is no other provision in the assignment chapter
about the assignee's bond; but inasmuch as section 122
makes the assignee, upon filing such petition and bond,
a receiver of the chancery court, let us turn to the chan-
cery court chapter to look for other provisions in refer-
ence to receivers' bonds.    The only provision we find
there is section 634 with reference to the giving of a new
bond:

''When it shall be alleged that the security on an in-
junction or receiver's bond, or any bond taken upon any
proceeding in the chancery court, is insufficient, the
chancellor    shall    have    power    to    hear    and    deter-
mine    the    same    in    vacation,    as    well    as    in    term
time, and may order the injunction to be dissolved,
or the receiver to be suspended or removed, or may
make such other order as may be just and equitable
in the case, unless a new bond with sufficient sureties
be given within twenty days, or such time as he shall ap-
point; but if done in vacation, at least five days notice of
the time and place of making application shall be given
to the opposite party.''

This section 634, as your honors will notice, has no
reference to the discharge of the surety or sureties from
the first bond. On the contrary, its contemplation is the
giving of additional security; because the original has
become insufficient. In other words, the giving of the
new bond under section 634 does not discharge the first,
but makes the so called new bond cumulative security,
and both bonds continue in force.

There will not be found any provision, in the case of
receivers' bonds, for a surety's release, even on the ap-
plication of the surety apprehending danger, as in the
case of guardians, administrators and public officers.

If then the court is to hold that the sureties on a re-
ceiver's bond may be released, it can only be by the

adoption of the practice with reference to the release of sureties from the bonds of guardians, administrators and public officers. So let us consider the power of the court to discharge the bond of a guardian, administrator or public officer.

Turning to the chapter on guardians, section 2407 will indicate the method for a surety's release from a guardian's bond, but it will be noted that this is on the petition of the surety, not the principal, alleging apprehension of danger because of its suretyship.

Turning next to the chapter on executors and administrators, there will be found in section 2038 a method for the release of the executor's and administrator's bond, and again it will be noted that this is upon the petition of the surety, alleging the apprehension of danger of loss because of its suretyship.

In section 2037 it will be found of course that the court or chancellor can voluntarily or on suggestion require a new bond, as the court or chancellor could of receivers under section 634, but that requirement has reference to increasing the security rather than releasing the same or any part of it. In other words, the new bond which the court or chancellor may require under section 2037 does not contemplate discharging the old bond, but becoming concurrent therewith, that is, cumulative security.

By reference to sections 3470 and 3471 it will be found that sureties on official bonds may be released in the same way.

There will not be found in Code or acts any provision for release of the surety at the instance of the principal. The reason doubtless is that it would never do to allow the principal to release his surety, because it might lead to all manner of fraud and collusion.

The idea is and should be to get the best security possible, all possible, for the protection of the estate, and surrender none of it except at the instance of the surety, and then only when justice to the surety requires.

In the next place, it must be borne in mind that the beneficiary for whose protection bond is required, acquires a kind of property right or vested interest in the security thereof, and it should not and cannot be lightly taken from him.

In 2 Brandt on Suretyship, section 705, it is stated that strict compliance with the statutory requirements is necessary to release the surety.

In *Clark* v. *American Surety Company*, 171 Ill. 235, a probate court had undertaken to discharge the surety on an administrator's bond, on the application of the administrator, the surety consenting in writing thereto, and the court said: "The proceeding to release sureties is statutory and of a summary character, requiring no notice, to the parties ultimately entitled to the fund and the statute cannot be extended by construction to authorize the discharge of a surety on the application of the principal in the bond, in the absence of any provision in the statute authorizing it. 2 Heisk, 623."

In *Faust* v. *Murphy*, 71 Miss. 129, the board of supervisors of Noxubee county undertook to authorize a substitution of sureties on a chancery clerk's bond, and the supreme court of Mississippi said: "It is not pretended that any of the sureties on the bond had removed or become insolvent, nor had any one of them petitioned for release from the bond, and it is only under such circumstances that authority exists for the board to require or receive sureties."

The sureties on the first bond were held and the new ones were not.

There the supreme court of Mississippi clearly holds that the power to release sureties is statutory and the statutory circumstances must exist.

In the case at bar, the court's order attempting to discharge the bond executed by plaintiff for defendant shows upon its face that the statutory circumstances warranting discharge of the first did not exist; in fact, it affirma-

tively appears that the substitution was solely because the receiver desired it.

In *McWilliams* v. *Norfleet,* 60 Miss. 987, the court held that it would be presumed that the circumstances warranting the giving of a new bond existed but only where the record was silent, as to what the circumstances were.

Here the record is not silent; on the contrary, it shows affirmatively that the attempted discharge was on the voluntary application of the principal, and there cannot be found any statutory authority for the court's action on such a predicate; indeed, as heretofore indicated, there is no express statutory provision for release of a surety from a receiver's bond even on the application of the surety as in the case of guardians, administrators and officials.

The court was, therefore, without authority or power to discharge plaintiff and the order is void. This is the effect of the supreme court's holding in *Fant* v. *McGowan,* 57 Miss. 779.

In the *Fant case* the controversy was whether a guardian had been removed by an order of the court requiring a new bond and revoking his letters for failure to file the requisite new bond within the stipulated time, and the argument was urged that the order of removal, whether right or wrong, was the judgment of a competent court upon a case clearly within its jurisdiction and therefore not subject to collateral attack, but the court, through Judge CAMPBELL, said: "An order requiring a new bond must be made; an opportunity must be afforded to comply; refusal to comply must be ascertained and then the removal may be made; but an order of removal, made before default in the requirement to give a new bond, is without authority of law and void. A judgment which the court has no authority by law to render is void. It matters not what is the grade of the court, if it transcends its lawful authority its act is void."

If the order in that case was held void because it did not track the statute, then certainly the order in the in-

stant case is void. Being void, the order of course did
not discharge the plaintiff from defendant's bond, and it
continues in force and plaintiff is entitled to the stipu-
lated premium and the demurrer should have been over-
ruled.

I think the bond executed by the Tirle Guaranty &
Surety Company is a nullity, and has never operated, but
if it is of any effect, it is necessarily, in view of the in-
sufficiency of plaintiff's discharge, cumulative security,
and does not affect the currency of plaintiff's bond.

If the court's order had been an attempt at reducing
the amount of plaintiff's bond, instead of an effort to dis-
charge it wholly by the voluntary substitution of another
bond, it would have been void, because there is no stat-
utory authority for the voluntary discharge of a surety
from part of its undertaking. It would not do to grant
a court this authority, because the beneficiary's rights
might be seriously affected and he be powerless to pro-
tect himself. There is no way of telling before the final
account of a fiduciary is filed whether his acts will pass
the fire of the beneficiary's exceptions. The only safe
method for a court to pursue is to take good security in
the start off, require additional security where the first
becomes weakened or is necessary to meet the increase
of the estate, and cling to all its security until the fidu-
ciary has reported and his reports have been finally ap-
proved on notice to the beneficiary, unless the surety de-
mands release under circumstances indicated by the stat-
ute.

*R. W. Cutret,* for appellee.

The appellant's contention is that the chancellor had
no authority to cancel its bond, and notwithstanding he
undertook to do so, the order is void, and appellee owes
the premium for the second year.

To the declaration the appellee interposed a demurrer
setting out the following grounds:

105 Miss. 19

"First, the declaration fails to state any cause of action against the defendant, upon which a judgment could be predicated against him.

"Second, the declaration shows on its face that the bond for which the premium is sued for herein, was cancelled by the chancery court of Pike county, Mississippi, which court had jurisdiction in said cause, and the plaintiff discharged by an order of said chancery court of Pike county, Mississippi, from any further liability under said bond, and that no premium accrued to plaintiff under said bond for which it has not been paid.

"Third, the declaration shows on its face that there is a failure of consideration for the amount herein sued for.

"Fourth, the premium sued for in this case has not accrued to plaintiff, and therefore, plaintiff is without a cause of action for same."

The sole question presented by this record is, did the chancellor have authority under the law to cancel appellant's bond. If he did then the demurrer was properly sustained.

There is no doubt but that the chancery court had full jurisdiction over the administration of the bank's affairs, and clothed with the authority, under the law, to make all orders for the best interest of the estate.

The appellee presented his petition to the chancellor setting out certain facts it would be for the best interest of the estate that appellant's bond be cancelled, and a new one given in lieu thereof, and the chancellor heard these facts and thought it would be for the best interest of the estate that the bond be cancelled and so decreed, and this fact now becomes *res adjudicata*. The appellant had notice that appellee would ask the chancellor for the decree cancelling its bond and made no objection, and I submit it is too late now to undertake to complain at the action of the chancellor.

Under section 122, Code 1906, appellee became the receiver of the chancery court when he filed his petition and

bond as assignee, and under section 628, Code 1906, he became subject to the orders, instructions and decrees of the chancery court.

In this case the chancellor decreed that appellant's bond be cancelled, and of course, appellee refused to pay another premium on same. Mind you there is no contention here for the first year's premium. That was paid, and the bond was cancelled at the expiration of the first year.

There is no merit in appellant's contention that the chancellor had no authority to cancel appellant's bond.

If appellant's contention be true, then a surety company could not object to the cancellation of its bond as long as there was any money belonging to the estate, and in this way put the estate at its mercy. This cannot be the law.

The authorities cited by appellant in his brief do not apply to the case at bar, and I submit the demurrer was properly sustained, and that this case should be affirmed.

Cook, J., delivered the opinion of the court.

Appellee was assignee receiver of the People's Bank of Magnolia, and as such he was required to give a bond for one hundred thousand, two hundred and fifty dollars, and procured appellant to execute this bond as his surety. In consideration of appellant's suretyship, appellee contracted to pay appellant annually a premium of five hundred and one dollars and twenty-five cents. The first premium was paid, but appellee refused to pay the second premium when it fell due under the contract, whereupon appellant instituted this action to recover the second premium. Before the premium sued for was due, appellee filed his petition in the court of which he was receiver, tendering another bond for sixty thousand, two hundred and fifty dollars as a substitute for the bond executed by appellant, whereupon the chancellor entered an order authorizing the substitution of the sec-

ond bond for the first, and discharging appellant from future liability on the first bond. Appellant was not a party to this proceeding.

The declaration in this case sets out the execution of the bond, the proceedings in the chancery court whereby the chancellor undertook to reduce the penalty of the receiver's bond and discharge appellant from future liability, and the refusal of appellee to pay the second premium, and demands judgment for the amount thereof. To this declaration appellee interposed a demurrer, assigning several grounds therefor, to wit: " (1) The declaration fails to state any cause of action against the defendant, upon which a judgment could be predicated against him. (2) The declaration shows on its face that the bond for which the premium is sued for herein was canceled by the chancery court of Pike county, Miss., which court had jurisdiction in said cause, and the plaintiff discharged by an order of said chancery court of Pike county, Miss., from any further liability under said bond, and that no premium accrued to plaintiff under said bond for which it has not been paid. (3) The declaration shows on its face that there is a failure of consideration for the amount herein sued for. (4) The premium sued for in this cause has not accrued to plaintiff. And for other causes to be made known at the hearing of this demurrer." The demurrer was sustained; hence this appeal.

It will be noted that the suit was against appellee personally, and not against him as assignee receiver. The question to be decided is this: Did the order of the chancery court upon the ex parte petition of the assignee receiver discharge the surety company from future liability on its bond? If it did, the demurrer was properly sustained; if it did not, appellant was entitled to recover the amount demanded, and the case must be reversed.

It is contended by appellant that the chancery court, in the absence of statutory authority, was without power

to discharge the bond, and that no such statute exists. If appellant is right, it follows, of course, that it is still liable on the bond, and appellee is liable for the premium. When an assignee becomes a receiver of the chancery court, he is required to execute a bond in the manner prescribed by section 121, Code of 1906. This section is as follows: "The assignee or trustee must file a bond with his petition, to be approved by the clerk, in a penalty equal to the value of all the property assigned and two hundred and fifty dollars additional, payable to the state, with at least two sufficient sureties, conditioned for the faithful administration of his trust. Any judgment or decree that may be rendered in said cause or proceeding against the principal in this bond may be rendered against the sureties therein." Upon the filing and approval of the bond prescribed by the statute, the assignee is then a receiver of the chancery court.

Looking to the power of the chancery court to require its receivers to give new bonds, we can find but one section of the Code dealing with the subject—section 634, which reads thus: "When it shall be alleged that the security on an injunction or receiver's bonds, or any bond taken upon any proceeding in the chancery court is insufficient, the chancellor shall have power to hear and determine the same in vacation, as well as in term time, and may order the injunction to be dissolved, or the receiver to be suspended or removed, or may make such other order as may be just and equitable in the case, unless a new bond with sufficient sureties be given within twenty days, or such time as he shall appoint; but if done in vacation, at least five days' notice of the time and place of making the application shall be given to the opposite party."

It is to be observed that this statute gives to the court the power to suspend or remove a receiver, or make any other proper order in the case, when it shall be alleged that the security on the receiver's bond "is insufficient,"

unless a new bond with sufficient sureties be executed within the prescribed time. This section of the Code contemplates some proceeding instituted by some party in interest adverse to the receiver, and does not, in terms, at least, contemplate a procedure of the sort resorted to in the present case. In fact, the statute quoted does not confer upon the court the power to discharge the sureties on the original bond.

It is unnecessary to decide that the court could, or could not, *sua sponte,* require a receiver to strengthen his bond, which the court might deem insufficient, as that is not the point we are now considering. Granting the inherent power of the chancery court to make any and all orders necessary or proper to the preservation of estates being administered by the court, does it follow that it can, without statutory authority, discharge sureties upon bonds of receivers, at the request of the receiver? To discharge an unfaithful or incompetent trustee, or to require an additional bond, is one thing; while to discharge a solvent surety upon a bond given to indemnify parties in interest against a failure of the trustee to faithfully perform the duties imposed upon him by the law is another and different thing.

In the present case it is urged that the receiver had already administered and distributed the assets coming into his hands to such an extent as to authorize a reduction of the amount of his bond. If there was a statute authorizing the court to hear and determine this assumed condition, the contention of appellee would be sound; but inasmuch as the statute fixes the amount of the bond to be given before the assignee receiver could qualify, and because there is no statute which empowers the chancery court to scale the original bond, answers, we think, the contention of appellee. It must be remembered that the parties interested in the estate in course of administration were not made parties to this application of the receiver, and as there is no statute requiring this to be

done, we may safely conclude that the legislature intended to do only what they actually did; that is to say, provide for a bond sufficient to protect the interests involved, which should stand until the trust had been fully administered, or until it was shown that the surety was insolvent.

In 2 Brandt on Suretyship, sec. 705, it is stated that strict compliance with the statutory requirements is necessary to release the surety. In *Clark* v. *American Surety Co.,* 171 Ill. 235, 49 N. E. 481, a probate court had undertaken to discharge the surety on an administrator's bond, on the application of the administrator, the surety consenting in writing thereto, and the court said: "The proceeding to release sureties is statutory and of a summary character, requiring no notice to the parties ultimately entitled to the fund and the statute cannot be extended, by construction, to authorize the discharge of a surety on the application of the principal in the bond, in the absence of any provision in the statute authorizing it. *Hickerson* v. *Price,* 2 Heisk., Tenn. 623." In *Faust* v. *Murphy,* 71 Miss. 129, 13 So. 864, the board of supervisors of Noxubee county undertook to authorize a substitution of sureties on a chancery clerk's bond, and the supreme court of Mississippi said: "It is not pretended that any of the sureties on the bond had removed or become insolvent, *nor had any one of them petitioned for release from the bond, and it is only under such circumstances that authority exists for the board to require or receive substituted sureties.*"

In the last-named case we are of opinion that this court is committed to the doctrine that the power to release sureties is purely statutory, and that the reasons for such discharge prescribed by the statute must be shown to have existed when the power is exercised. Appellant is still a surety, despite the order of the chancery court ordering its discharge. This being true, it is entitled to recover the premium due.

*Reversed and remanded.*